[Cite as *In re Estate of Watson*, 2018-Ohio-3209.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Estate of Dennis D. Watson, Sr., Deceased

Court of Appeals No. L-17-1139

Trial Court No. 2009EST2714

**DECISION AND JUDGMENT**

Decided: August 10, 2018

* * * * *

Linde Hurst Webb, for appellants.

William J. Bingle, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Probate Division, which entered a judgment for the distribution of funds from a wrongful death settlement and denied appellants' motion for relief from that judgment. For the reasons set forth below, this court reverses the judgment of the probate court.

**{¶ 2}** According to the record, Dennis D. Watson, Sr., died on August 16, 2009, under circumstances leading to a wrongful death action by appellee's administrator and the decedent's personal representative, Deleasa Rutherford. Ms. Rutherford successfully obtained a $425,000 wrongful death settlement. At issue in this appeal is the probate court's distribution of wrongful death settlement funds totaling $217,470.29 among the group of 15 statutory wrongful death beneficiaries alive at the time of the decedent's death.

**{¶ 3}** Nine statutory wrongful death beneficiaries received a final distribution approved by the probate court on May 2, 2017, as follows: $104,892.95 to Deleasa Rutherford (decedent's daughter and appellee's administrator), $52,446.48 to Ijuana Watson (decedent's daughter, now an adult), $26,223.24 to Terence Watson (decedent's son), $26,223.24 to Victor Watson (decedent's son), $2,234.38 to Emmitt Watson (decedent's father, now deceased), $2,000 to Shannon M. Bunting (decedent's daughter), $2,000 to Christopher J. Morris (decedent's son and hereafter Christopher "Cherry" because "Cherry" appears most often in the record), $825 to June M. Gaston (decedent's sister), and $625 to Tyrone E. Watson (decedent's brother).

**{¶ 4}** One statutory wrongful death beneficiary, Dennis D. Watson, Jr. (decedent's son), received an off-record distribution of $50,000 from Ms. Rutherford, despite the probate court approving he receive nothing from the settlement due to his signed waiver.

**{¶ 5}** The remaining five statutory wrongful death beneficiaries received nothing from the settlement per order of the probate court: Antonio V. Watson (decedent's

2.

brother), Roger Tracy Watson (decedent's brother, now deceased), Joan Annette Watson (decedent's sister, now deceased), Shirley A. Foster (decedent's sister, now deceased), and Katyna L. Nickson (decedent's sister). In the case of Antonio Watson, the probate court order included a "note" that he may present a claim for up to $1,150 for reimbursement of DNA and transcript preparation expenses.

{¶ 6} Appellants are seven of decedent's statutory wrongful death beneficiaries, Emmitt Watson, Antonio V. Watson, Tyrone E. Watson, June M. Gaston, Shirley A. Foster, Shannon M. Bunting, and Christopher Cherry, who set forth three assignments of error:

I. The trial court committed error prejudicial to the appellants when it applied the legal standard "extraordinary circumstances" to avoid vacating the original wrongful death distribution under Civ.R. 60(B).

II. The trial court erred when it factually assumed that the decedents father, siblings and two children, Christopher Cherry and Shannon Bunting, were aware of or were present at the wrongful death distribution hearings on August 28, 2013, October 15, 2013 or as finally approved by the court on December 12, 2013, notwithstanding the fact that it was uncontroverted that none of them received notice by publication or otherwise.

III. The trial court committed error prejudicial to the appellant when it allocated a nominal share to them and to the Estate of Emmitt Watson, when the evidence at the hearings on March 14, 2016 and April 11, 2016

3.

was being presented solely to show that appellants had a meritorious claim under 60(B).

{¶ 7} The first two assignments of error will be addressed together. In support of their first and second assignments of error, appellants argue appellee failed to notify them of the proceedings under Ohio's Wrongful Death Statute. Specifically, appellants argue among them are statutory wrongful death beneficiaries pursuant to R.C. 2125.02(A)(1): the father and two children of the decedent, who are "rebuttably presumed to have suffered damages by reason of the wrongful death," and the siblings of the decedent, who are the "next of kin" of the decedent. As a result of appellee's failure to notify them, appellants argue they suffered by not being present at the August 28, 2013 and October 15, 2013 wrongful death settlement and distribution hearings, respectively, so the probate court could properly receive evidence of their damages to which they were entitled under the statute. Appellants argue they sought relief from judgment on October 15, 2014, as supplemented on February 26, 2015, under Civ.R. 60(B)(1), not (B)(5). Appellants further argue the probate court abused its discretion when it denied appellants' motion for relief from judgment because "failure to serve the Appellants/Claimants was a mistake under Civ.R. 60(B) and there is no need to prove 'extraordinary circumstances.'"

{¶ 8} In response appellee argues the probate court did not abuse its discretion when it found no "extraordinary circumstances" pursuant to Civ.R. 60(B) and denied appellants' motion for relief from judgment.

4.

**{¶ 9}** "We review a trial court judgment denying a motion for relief from judgment under an abuse of discretion standard." *Moore v. Moore*, 6th Dist. Erie No. E-17-011, 2018-Ohio-1545, ¶ 21, citing *Kerger & Hartman, LLC v. Ajami*, 6th Dist. Lucas No. L-16-1135, 2017-Ohio-7352, ¶ 13. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). However, because appellants' arguments call upon us to evaluate whether the probate court properly applied the "extraordinary circumstances" test in this matter, we review that question of law de novo. *Giancola v. Azem*, 2018-Ohio-1694, ¶ 13, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 17.

**{¶ 10}** A movant seeking relief from a court's final judgment or order must identify to the court one of the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the

5.

judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

Civ.R. 60(B).

{¶ 11} A movant "is entitled to relief from judgment under Civ.R. 60(B)(5) * * * only if he can demonstrate any other reason not listed in Civ.R. 60(B)(1)-(4) that justifies relief being granted. Ohio courts have routinely said that Civ.R. 60(B)(5) is not to be used as a substitute for any other more specific provisions of Civ.R. 60(B)(1)-(4)." *F.H. v. K.M.*, 6th Dist. Lucas No. L-16-1275, 2017-Ohio-5681, ¶ 4, citing *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 66, 448 N.E.2d 1365 (1983). To prevail on a Civ.R. 60(B) motion, "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 148, 351 N.E.2d 113 (1976), paragraph two of the syllabus.

{¶ 12} The first element requires appellants to "'provide operative facts which, if true, would constitute a meritorious defense; ultimate success on the merits need not be established.'" *Moore*, 6th Dist. Erie No. E-17-011, 2018-Ohio-1545, at ¶ 22, quoting *Kerger*, 6th Dist. Lucas No. L-16-1135, 2017-Ohio-7352, at ¶ 16; *Colley v. Bazell*, 64 Ohio St.2d 243, 247, 416 N.E.2d 605 (1980), fn. 3 ("a determination of [the underlying]

6.

dispute is not appropriate where the issue is resolution of the motion for relief from judgment. The movant's burden is to allege a meritorious defense, not to prevail with respect to the truth of the meritorious defense."). Appellants argue they were entitled to receive notice of the wrongful death settlement and distribution hearings and related court judgments as statutory wrongful death beneficiaries who could be identified and with reasonable diligence be contacted. Civ.R. 73(E); Sup.R. 70(B). We agree.

{¶ 13} It is well established that wrongful death claims belong exclusively to the decedent's statutory beneficiaries: "the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent." R.C. 2125.02(A)(1). By the clear language of the statute, the surviving spouse, the children, and the parents of the decedent are all rebuttably presumed to have suffered damages by reason of the wrongful death. *Id.* The "other next of kin of the decedent" do not share in that rebuttable presumption, but are included among the exclusive beneficiaries under the wrongful death statute. *Id.* Because "the wrongful death statute explicitly provides for parents, children, and spouse and then separately includes 'other next of kin,' next of kin means the nearest surviving relatives after accounting for the parents, children, or spouse." *In re Estate of Payne*, 10th Dist. Franklin No. 04AP-1176, 2005-Ohio-2391, ¶ 14. Each appellant meets the requirements to be a statutory wrongful death beneficiary. Thus, appellants are real parties in interest to the wrongful death proceedings entitled to receive notice. *Burwell v. Maynard*, 21 Ohio St.2d 108, 110, 255

7.

N.E.2d 628 (1970), citing *Douglas v. Daniels Bros. Coal Co.*, 135 Ohio St. 641, 647, 22 N.E.2d 195 (1939).

{¶ 14} According to the wrongful death statute, decedent's date of death "fixes * * * the status of all beneficiaries of the civil action for wrongful death for purposes of determining the damages suffered by them and the amount of damages to be awarded." R.C. 2125.02(A)(3)(a). The statutory wrongful death beneficiaries had vested interests in the wrongful death settlement and distribution at the time of decedent's death. *Brinkman v. Doughty*, 140 Ohio App.3d 494, 501-502, 748 N.E.2d 116 (2d Dist.2000). Therefore, the subsequent passing of appellants Emmitt Watson and Shirley A. Foster and non-appellants Roger Tracy Watson and Joan Annette Watson did not waive their vested interests derived as statutory wrongful death beneficiaries.

{¶ 15} Appellants point to the lack of actual notice to any of them. Appellee argues notice by publication was sufficient. Notice by publication will not prevail where "the party's address is known or easily ascertainable." *See PHH Mtge. Corp. v. Prater*, 133 Ohio St.3d 91, 2012-Ohio-3931, 975 N.E.2d 1008, ¶ 20. Appellee had the sole obligation to perfect service of the various notices on appellants, irrespective of appellants having some knowledge of the wrongful death litigation, because appellants had no duty to assist appellee in fulfilling that obligation. *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, 870 N.E.2d 714, ¶ 16, citing *Maryhew v. Yova*, 11 Ohio St.3d 154, 159, 464 N.E.2d 538 (1984).

8.

{¶ 16} First, appellants point to Shannon Bunting and Christopher Cherry, the only two of the decedent's seven children who appellee identified in probate court filings since 2009 with "address unknown" designations. Appellants allege their addresses were "available" and "discoverable," but do not elaborate. The record shows appellee had the knowledge and means of knowledge to locate Ms. Bunting and Mr. Cherry by non-publication means.

{¶ 17} The record shows that during her September 6, 2012 deposition in the underlying matter, Ms. Rutherford, appellee's administrator, received her information for the identification of her siblings, Ms. Bunting and Mr. Cherry, from her uncle, Tyrone E. Watson (aka "Uncle Ronnie"), because she had never met either of them since they had different mothers. "I talked to my uncles and them [sic]. They would know, and they would say yeah [sic]. But I never met [Ms. Bunting and Mr. Cherry] personally." Ms. Rutherford also testified, "I would like to see my brothers and sisters." Ms. Rutherford admitted during deposition she knew how to contact "Uncle Ronnie" and identified his exact address, indicating he lived on "the next street behind me." However, she never contacted him, according to the record.

{¶ 18} The probate court implied in its May 2, 2017 judgment entry that notice by publication was actually served on Ms. Bunting and Mr. Cherry, as follows: "Notice by publication had been granted by the Court on both the estate and wrongful death applications, and many of decedent's siblings and children attended both the settlement and distribution hearings despite the lack of their addresses being documented in the

9.

record." Pursuant to appellants' Civ.R. 60(B) motion, the notice by publication did not reach Ms. Bunting and Mr. Cherry, and they did not attend the hearings. Nothing in the record rebuts their claims they were missing from the "many" children present at the settlement and distribution hearings.

{¶ 19} Civ.R. 73(E) governs service of notices in probate court, and the persons to be served may differ depending on the specific pleading or paper being served. For example, service pursuant to R.C. 2109.32(B)(1) of fiduciary's accounting to "each heir of an intestate estate" would go to persons described in R.C. 2105.06 (or as determined by findings pursuant to R.C. 2123.05), but service of notice for a hearing pursuant to R.C. 2125.03(A) on distribution of a wrongful death settlement to each "beneficiary" would go to persons described in R.C. 2125.02(A)(1).

{¶ 20} Under the rule the movant seeking service of notice by publication must file an affidavit with the court that avers: "the name, usual place of residence, or existence of the person to be served is unknown and cannot with reasonable diligence be ascertained." Civ.R. 73(E)(6). From 2009 to the end of 2013, appellee's attorney maintained in affidavits that although she could identify Ms. Bunting and Mr. Cherry, she could not find addresses for them, despite "reasonable diligence" that included "searches via the internet and Lexis-Nexis." The affidavits did not describe the "searches via the internet," the "searches via * * * Lexis-Nexis," nor the "numerous attempts to locate the heirs of the Deceased" that did not include a computer search. During this time appellee had the obligation to perfect service of the notices to Ms. Bunting and Mr. Cherry of the

10.

August 28, 2013 hearing on the wrongful death settlement, the August 28, 2013 probate court judgment approving the wrongful death settlement, the October 15, 2013 hearing on the distribution of the wrongful death settlement, the November 15, 2013 magistrate decision recommending the distribution of the wrongful death settlement, and the December 12, 2013 probate court judgment approving the distribution of wrongful death settlement.

{¶ 21} This evidence in the record of the lack of "reasonable diligence" directly contradicts the probate court's orders authorizing legal notice by publication on December 17, 2009, and July 2, 2013. Mere recitation of the statements required by a Civ.R. 73(E)(6) affidavit is insufficient. *See In re S.K.*, 6th Dist. Lucas No. L-12-1234, 2013-Ohio-517, ¶ 13 (movant supported affidavit for publication with descriptions of the computer searches and failed contacts made with state agencies, former employers, an attorney, and sheriff); *see also Morris v. Mull*, 110 Ohio St. 623, 627, 144 N.E. 436 (1924), paragraph two of the syllabus (reasonable diligence includes employing the knowledge and means of knowledge at a person's command to locate the legatee of a bequest before the person secures the bequest for himself).

{¶ 22} In addition to appellee's administrator knowing how to find "Uncle Ronnie," on October 15, 2014, "Uncle Ronnie" filed a pro se "Motion to Vacate Order/ Judgment for Fraud" on behalf of himself and other appellants. "Uncle Ronnie" then filed the certificate of service of the motion on November 26, 2014, and the notice included the mailing address for Mr. Cherry, who also separately filed on December 9,

11.

2014, an appearance notice with the probate court. It is not clear why the pro se certificate of service left off Ms. Bunting, but on December 9, 2014, she filed her own appearance notice with the probate court in response to receiving a copy of the motion. "Reasonable diligence" by appellee would have connected appellee, who knew how to contact "Uncle Ronnie," who, in turn, knew how to contact Ms. Bunting and Mr. Cherry. The probate court magistrate's January 25, 2017 decision states, "Ms. Rutherford denies being informed that notice was needed to not only Mr. Cherry and Ms. Bunting but also to her aunts and uncles." However, we find "[t]he general rule is that ignorance of the law is no excuse." *State ex rel. Bd. of Edn. v. Holt*, 174 Ohio St. 55, 57, 186 N.E.2d 862 (1962). Appellee's mistakes and ignorance fall within the purview of Civ.R. 60(B)(1).

{¶ 23} Second, appellants point to Emmitt Watson, the decedent's father, who was never identified as a statutory wrongful death beneficiary in any court filings and hearings either by appellee or the court. The record shows appellee had the knowledge and means of knowledge to locate Emmitt Watson by non-publication means.

{¶ 24} The decedent was appellant's court-appointed guardian, and after decedent's death, appellant Shirley A. Foster, the decedent's sister, was appointed the successor guardian. Ms. Rutherford admitted during her September 6, 2012 deposition she knew her grandfather, Emmitt Watson, was under guardianship, that the decedent had been his guardian, and that her grandfather was probably living with "Uncle Ronnie" and Ms. Foster after the decedent's passing. Ms. Rutherford further admitted during the

12.

deposition she knew how to contact her aunt Shirley because she believed her aunt lived with her "Uncle Ronnie" and grandfather, and she knew how to find "Uncle Ronnie."

{¶ 25} It is undisputed appellee's legal notice by publication, journalized August 6, 2013, for the wrongful death settlement and distribution hearing scheduled for August 28, 2013, did not identify the decedent's father, Emmitt Watson, in it. We find Emmitt Watson was the opposite of an "unknown next of kin" pursuant to R.C. 2125.02(A)(1).

{¶ 26} In addition, the probate court magistrate's January 25, 2017 decision states, "Emmitt Watson should certainly have been included as a presumptive beneficiary of wrongful death funds, and his address was known to Ms. Rutherford and that of his successor guardian was certainly available to her also, so there is no question that Civil Rule 60(B) is applicable to this case where publication with regard to him was insufficient." Despite that finding of fact, the magistrate recommended Emmitt Watson receive nothing from the wrongful death settlement.

{¶ 27} Third, appellants point to the decedent's siblings, Antonio V. Watson, Tyrone E. Watson, June M. Gaston, and Shirley A. Foster, none of whom were ever identified as statutory wrongful death beneficiaries to receive notice of any court filings and hearings by appellee or the court. The record shows appellee had the knowledge and means of knowledge to locate these appellants by non-publication means.

{¶ 28} The record shows that from the public records of the guardianship of Emmitt Watson filed with the probate court as case No. 2002-GDN-002746, the names

13.

and addresses of appellants Tyrone E. Watson, June M. Gaston, and Shirley A. Foster were discoverable. From the October 24, 2012 deposition of Tyrone E. Watson taken in the underlying matter, the names and whereabouts of appellants Antonio V. Watson, Tyrone E. Watson, June M. Gaston, and Shirley A. Foster were provided. The record shows Ms. Rutherford testified during her September 6, 2012 deposition she knew not only the names and genders of the decedent's siblings, but in some cases the city and state where they lived, and, in the case of "Uncle Ronnie," his exact address. Ms. Rutherford further testified that she knew her "Uncle Ronnie" knew how to contact her aunts and uncles. Further, the record contains "Uncle Ronnie's" pro se 2014 motion to vacate judgment, the motion's certificate of service, and appearance notices alleging the ease with which the appellants could be located.

{¶ 29} The probate court states in its May 2, 2017 judgment entry that both the August 28, 2013 hearing on wrongful death settlement and the October 15, 2013 hearing on distribution occurred "with most of the decedent's siblings present" and "with many of decedent's siblings again present," respectively. However, there is nothing in the record to indicate that any of the decedent's seven siblings were present, let alone "most" or "many" of them. The probate court magistrate acknowledged in the record that "both the August and October hearings were held off the record." We find the record shows two siblings, Roger Tracy Watson and Joan Ann Watson, died before the August 28, 2013 hearing, so they could not have attended. The record shows four additional sibling appellants allege they did not receive notice and, therefore, did not attend the hearings.

14.

That leaves only one sibling, Katyna Nickson, who might have attended the hearings if she knew of them, but the record does not contain any indication she did. We do not find that one out of seven siblings constitutes either "most" or "many" siblings, as the probate court suggests.

{¶ 30} The probate court's May 2, 2017 judgment entry, as with Ms. Bunting and Mr. Cherry, also implied notice by publication was actually served on the sibling appellants. However, once again, there is nothing in the record to indicate that any of the decedent's seven siblings was present at the wrongful death settlement and the distribution hearings. We find the probate court magistrate's January 25, 2017 decision states, "While Ms. Rutherford diligently saw to it that settlement went through, she clearly failed to use the same level of diligence in providing addresses for both first degree and second degree next of kin."

{¶ 31} The foregoing contradictions in the record regarding appellee's notice practices under the wrongful death statute and appellants' lack of attendance at the wrongful death settlement and distribution hearings satisfies the first element for appellants' motion for relief from judgment.

{¶ 32} The second element required appellants to seek relief under one of the grounds stated in Civ.R. 60(B)(1) through (5). We find appellants satisfied the second element. Ms. Rutherford stated in the record she did not know all appellants were statutory wrongful death beneficiaries entitled to receive notice. Appellee's failures to ascertain with the necessary "reasonable diligence" the identity and contact information

15.

for each appellant are rooted in mistake, inadvertence, or excusable neglect, which are grounds stated in Civ.R. 60(B)(1).

{¶ 33} The third element required appellants to file the motion within a reasonable time. We find appellants satisfied the third element. Appellants filed their pro se motion to vacate judgment on October 15, 2014, as supplemented on February 26, 2015. Thus, appellants' original motion was filed within the one-year limit from the December 12, 2013 judgment of the probate court. Civ.R. 60(B)(1).

{¶ 34} Contrary to the probate court's conclusion of law in its May 2, 2017 judgment entry, we do not find any mandate for requiring a showing of "extraordinary circumstances" with respect to appellants' Civ.R. 60(B)(1) motion. The probate court's conclusion relied on holdings in *Connors v. Cook*, 10th Dist. Franklin No. 03AP-708, 2004-Ohio-589, ¶ 9, citing *Whitt v. Bennett*, 82 Ohio App.3d 792, 797, 613 N.E.2d 667 (2d Dist.1992). However, those decisions clearly limited any requirement to show "extraordinary circumstances" to a motion under Civ.R. 60(B)(5), which is not at issue in this appeal. *McBroom v. McBroom*, 6th Dist. Lucas No. L-03-1027, 2003-Ohio-5198, ¶ 31.

{¶ 35} As journalized on May 2, 2017, the probate court denied appellant's Civ.R. 60(B) motion, stating "The prior entry [of December 12, 2013] on settlement and distribution of wrongful death proceeds shall remain in force. Extraordinary circumstances have not been established to warrant vacating the initial distribution entry under the circumstances even though decedent's father, Emmitt Watson, was not

16.

included in the original distribution."  We find the probate court abused its discretion when it denied appellants' motion for relief from judgment and erred when it required appellants to prove "extraordinary circumstances" under Civ.R. 60(B)(1).

{¶ 36} Appellants' first and second assignments of error are well-taken.

{¶ 37} In support of their third assignment of error, appellants argue the probate court's award of only nominal damages ignored their status at the time of the decedent's death pursuant to R.C. 2125.02(A)(3)(a).  Appellants argue the probate court abused its discretion when it unilaterally used the evidence presented for the Civ.R. 60(B) motion as the evidence for a distribution pursuant to R.C. 2125.03.  In further support, appellants argue "Emmitt Watson was dependent on his son Dennis [the decedent], whose caretaking [as the court-appointed guardian] kept his father out of a nursing home."  Emmitt Watson's death five years later was not relevant and did "not obviate the need to find a distribution due to him, that should have happened at a time when he needed it the most."  Appellants argue the "money that should have been given to guardianship, on behalf of Emmitt Watson, would be used to hire needed caregivers that would continue to assist Emmitt Watson at home – and keep him from a nursing home."  He was eventually placed in a nursing home, referred to by appellants as "a horrible result."  Then because of "the need to get their father out of the nursing home," Emmitt Watson moved to St. Louis in 2012 where he lived with appellant June M. Gaston until his death in 2014.

{¶ 38} In response, appellee argues the probate court did not abuse its discretion when it determined the wrongful death settlement distribution pursuant to R.C.

17.

2125.02(A)(2), (A)(3)(b)(i), and (B)(1) to (5). Appellee argues we must give deference to "the presumption that the findings of the Trial Court are correct, because the Trial Judge is best able to view the witnesses and observe their demeanor, gestures and voice inflection and use those observations in weighing the credibility of the testimony." Under the "totality of circumstances" the probate court did not err when it "did not find the 'extraordinary circumstances' * * * to justify a vacation of the initial wrongful death settlement proposal."

{¶ 39} Having found appellants met their Civ.R. 60(B)(1) burden, appellants did not have the additional burden to prove their wrongful death damages during the Civ.R. 60(B)(1) hearings. A hearing for the individual presentation of appellants' damages would be pursuant to R.C. 2125.02, not Civ.R. 60(B)(1). "[E]ach statutory wrongful death beneficiary's claim is considered separate and distinct from the claim of the estate, and from each other, pursuant to R.C. 2125.02(A)(1)." *Clark v. Scarpelli*, 91 Ohio St.3d 271, 281, 744 N.E.2d 719 (2001), citing *Wood v. Shepard*, 38 Ohio St.3d 86, 90, 526 N.E.2d 1089 (1988).

{¶ 40} It is well-settled the appellants who are "other next of kin" without the presumption of damage had rights to submit proof of damages under the wrongful death statute. *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 97, 592 N.E.2d 828 (1992), paragraph two of the syllabus ("Pursuant to the Ohio wrongful death statute, R.C. 2125.02, other next of kin, although not presumed to have sustained damages, may recover damages for mental anguish and loss of society upon proper proof thereof, even

18.

though there is a surviving parent, spouse, or minor children."). "Damages for mental anguish suffered by the decedent's next of kin are in addition to, not in lieu of, other wrongful death damages." *Couture v. Toledo Clinic, Inc.*, 6th Dist. Lucas No. L-07-1277, 2008-Ohio-5632, ¶ 32, citing *Ramage* at 105-106.

{¶ 41} The probate court's January 25 and May 2, 2017 judgment entries contain findings of "fact" that improperly transformed the evidence from the requirements pursuant to Civ.R. 60(B)(1) into the requirements pursuant to R.C. 2125.02. The record shows the probate court did not hold the March 14 and April 11, 2016 hearings to reopen its wrongful death settlement and distribution judgment entries journalized on August 28 and December 12, 2013, respectively. Rather, as stated by the probate court's judgment entry journalized February 27, 2015, the hearings for appellants' Civ.R. 60(B)(1) motion were only joined by the probate court's consideration of a proposed additional $12,100 wrongful death settlement distribution to Ms. Rutherford (to bring her distribution up to $116,992.95).

{¶ 42} We find the probate court abused its discretion when its May 2, 2017 entry showed it added to its December 12, 2013 judgment additional wrongful death settlement distributions based on the Civ.R. 60(B)(1) testimony elicited on March 14 and April 11, 2016.

{¶ 43} Appellants' third assignment of error is well-taken.

**{¶ 44}** The judgment of the Lucas County Court of Common Pleas, Probate Division, is reversed. This matter is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.